LEACH v. CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. MASTER AND SERVANT—DEATH OF SERVANT—TELEGRAPH LINEMEN—EVIDENCE.

Deceased, an experienced lineman in defendant's employ, was directed to assist in constructing a line, and in so doing it became necessary to transfer wires from a defective pole to a new pole. The old pole was stayed by a guy wire, and deceased was warned not to cut the guy until all the work on the pole was completed. Decedent climbed the pole, and before removing any of the other wires cut the guy wire, which caused the pole to fall, throwing deceased to the ground, and from injuries sustained he subsequently died. *Held*, that the death was caused by decedent's own negligence.

Appeal from Trial Term.

Action by Anna L. Leach, as administratrix of the estate of Clarence E. Leach, deceased, against the Central New York Telephone &

Telegraph Company, for wrongful death of plaintiff's intestate. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and LYON, JJ.

John N. Carlisle, for appellant.

Vasco P. Abbott, for respondent.

PARKER, P. J. If the fact that the plaintiff is a widow, suffering under this distressing accident, were sufficient to establish a cause of action against this defendant, then this verdict might be sustained; but, inasmuch as it was necessary for her to show that such accident resulted from some negligent act or omission of the defendant, and without any contributory negligence on her husband's part, she has utterly failed to establish any claim whatever against it. The deceased was an employé of the defendant, working as a "lineman," so called. He assisted it in constructing its lines, and it was a part of his duties to dig holes, set up poles, and string wires upon them. At the time of the accident he was at work constructing a line for the defendant in the village of Antwerp, and most of it seems to have been built by stringing its wires upon the poles of another company then operating in such village. One pole, however, it appears from the evidence, was not safe to be permitted to stand, and it was arranged between the manager of the Antwerp company and the deceased and one Jennings, who was working for the defendant with him, that they would erect a new pole on the opposite side of the street from the unsafe one, and then move all the wires thereon to the new pole. This new pole was set up a day or two before the accident, Leach, Jennings, and others doing the work. Before that was done the unsafe pole was examined, and there cannot be the slightest doubt from the evidence but that Leach saw its exact condition, and knew as much about the dangers attending its removal as any one could ascertain. It stood in made ground, and on a slanting bank, from which the earth on the east side had been washed away nearly to the foot of the pole. It was supported by the wires strung upon it and by a guy that extended from the upper end westerly over onto the shop of one Dixon. On the afternoon of July 7th Jennings left Antwerp for Watertown, where they lived, intending to return the next day. Walker, another lineman, came the next morning early to assist Leach in transferring the wires from the old to the new pole. On the morning of the 8th they both began that work, and Leach went up to the top of the pole and cut the guy wire above referred to. The strain of the other wires was all towards the east, a fact which was plain to be seen by a lineman, and as soon as the support of that guy was taken away the pole fell over towards the east, falling as far as the buildings, or wires which were still strung upon it, would allow, and Leach was thrown off and killed. The hold which the foot of the pole had in the earth was not sufficient to support it. Leach was in charge of the work that morning. No one at that time gave him any instructions to cut that wire, and no one—neither Jennings nor any one else—had ever given

him any instructions that required him to do so. He had been up on the pole a few days before, and done some work on the cross-arms, and so demonstrated that it was a safe place to work upon, so long as the guy wire leading off to the west was there to support it. The evidence is conclusive that there was no necessity to cut that wire in order to remove the other wires; and the foreman of the Antwerp company had that morning told him not to cut the guy until all the work was done upon the pole. Beyond all doubt the cutting of the wire was the sole cause of the pole's then falling; and it is equally certain that Leach, who was a lineman of several years' experience, knew as well as any one could know the danger that might be expected from cutting that guy. Nothing required him to cut it. He did so in disregard of Augsbury's advice not to. He deliberately took the chances, and his own carelessness or misjudgment was the sole cause of his death. Under such circumstances we can sympathize with the widow, but we cannot sustain a verdict in her favor.

The judgment and order must be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.